UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.                                       Case No. 8:22-cv1939-TPB-AAS

TARONIS TECHNOLOGIES, INC.
(n/k/a BBHC, INC.),
TARONIS FUELS, INC.,
SCOTT DAVID MAHONEY, and
TYLER BURNETT WILSON,

      Defendants.
_____/

## ORDER DENYING "DEFENDANT TYLER B. WILSON'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT"

This matter comes before the Court on "Defendant Tyler B. Wilson's Motion to Dismiss Plaintiff's Complaint." (Doc. 34). Plaintiff, the Securities and Exchange Commission ("SEC"), filed a response in opposition. (Doc. 45). After reviewing the motion, response, court file, and record, the Court finds as follows:

## Background

The SEC initiated this civil enforcement action by filing a 24-count, 79-page complaint asserting claims against two corporate entities, Taronis Technologies, Inc. ("Tech") and Taronis Fuels, Inc. ("Fuels"), and their executive officers, Scott Mahoney and Tyler Wilson for violations of the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act), the rules and regulations issued thereunder, and the Sarbanes-Oxley Act of 2002 ("SOX"). (Doc.

1).[1]  Specifically, as to Wilson, the SEC asserts claims against him in 14 of the 24

counts – six claims of securities fraud and eight claims relating to alleged

accounting violations, the filing of false or misleading financial reports, and aiding

and abetting violations committed by Fuels – and requests imposition of a

permanent injunction against Wilson as well as disgorgement and prejudgment

interest, civil monetary penalties, officer and director bars, and reimbursement

from Wilson.[2]

Mahoney held positions as Tech's CEO and a director on its Board of

Directors since November 2018, and he served as Tech's CFO and Secretary from

December 2016 until November 2018.  Mahoney held positions as Fuels' CEO and a

director on its Board of Directors from its formation until he resigned on April 2,

2021.  Mahoney also briefly served as Fuels' Interim CFO and Treasurer in

December 2020.  Wilson is a licensed attorney and served as a director on Tech's

Board of Directors.  He served as Tech's General Counsel from approximately June

2017 to May 6, 2021; its CFO from approximately September 1, 2019 to May 6,

---

[1]  The Court entered consent judgments against Fuels and Mahoney.  (Docs. 32; 33).
Mahoney continues to litigate the civil monetary penalties imposed by the SEC.  *See* (Docs.
59; 60; 70; 71; 83; 84).  Although the Clerk entered a default against Tech (Doc. 18), the
SEC's request for a default judgment was denied without prejudice as to Tech until final
resolution of the claims against Wilson.  (Docs. 50; 54).

[2]  The SEC asserts the following claims: violations of Section 17(a)(1)-(3) of the Securities
Act, Section 10(b) of the Exchange Act, and Rule 10b-5(a)-(c) (Counts I, II, III, IV, V, VI);
aiding and abetting Fuels' Violations of Section 13(a), (b)(2)(A), and (b)(2)(B) of the
Exchange Act and Rules 12b-20 and 13a-13 (Counts VIII, X, XII); violations of Section
13(b)(5) of the Exchange Act and Rule 13b2-1 (Count XIII); violations of Exchange Act Rule
13b2-2 (Count XIV); violation of Exchange Act Rule 13a-14(a) (Count XV); violation of SOX
§ 304(a) (Count XVI); and control person liability under Section 20(a) of the Exchange Act
(Count XXII).

2021; and its Secretary from approximately December 2018 to May 6, 2021.  He also served as Fuels' General Counsel from approximately 2018 to May 6, 2021; its CFO from approximately September 1, 2019 to November 4, 2020; and its Secretary from approximately 2018 to May 6, 2021.

Fuels was originally a wholly owned subsidiary of Tech.  The companies manufactured and sold fuel and gas products, including a metal-cutting fuel called MagneGas, as well as water conservation and sterilization products.  In connection with these products, it manufactured gasification and sterilization units, including its patented Venturi Plasma Arc gasification units.  Tech spun off Fuels in December 2019, retaining the water side of the business while transferring the fuel and gas side of the business to Fuels.

Essentially, the SEC alleges that Wilson and Mahoney engaged in a fraudulent scheme to improperly recognize revenue and thereby attract investors: to that end, they knowingly used inaccurate accounting principles, backdated orders, engaged in fake asset transfers between Tech and Fuels, misrepresented contractual relationships, published inaccurate and misleading press releases, and filed inaccurate financial statements.  As to Wilson, the SEC specifically alleges that he signed off on inaccurate financial statements, drafted supporting documentation for same, deceptively falsified and backdated orders, and misrepresented Fuels' financial state to its auditing firm.  He also supervised the accounting staff and, the SEC argues, is therefore liable for those employees'

fraudulent conduct as well.  Given his conduct, the SEC alleges that Wilson either knew or was reckless in not knowing of the scheme.

Wilson moves to dismiss the SEC's claims against him.  He contends that the complaint should be dismissed because it constitutes a shotgun pleading and because the SEC fails to allege any plausible claims of securities fraud, of aiding and abetting liability, of falsifying reports or lying to accountants, of control person liability, or of a violation of SOX § 304(a).

## Legal Standard

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  While Rule 8(a) does not demand "detailed factual allegations," the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint challenged by a motion to dismiss brought under Rule 12(b)(6), Federal Rules of Civil Procedure, need not contain detailed factual allegations, a plaintiff must provide the grounds for his or her entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555 (citation omitted).  The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Accordingly, only a complaint that states a plausible claim for relief will survive a motion to dismiss. *See id.* at 679.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint and any exhibits attached thereto.  Fed. R. Civ. P. 10(c); *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995).  "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case."  *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, No. 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009).

In cases involving fraud, Rule 9(b) requires that the complaint state with particularity the circumstances constituting the fraud or mistake.  Fed. R. Civ. P. 9(b) "This *particularity* requirement is satisfied when a complaint includes 'facts as to time, place, and substance of the defendant's alleged fraud.'"  *S.E.C. v. Strebinger*, 114 F. Supp. 3d 1321, 1329 (N.D. Ga. 2015) (quoting *U.S. ex rel. Clausen v. Lab Corp. of Am., Inc.*, 290 F.3d 1301, 1308 (11th Cir. 2002)).  Rule 9(b) provides that a party may allege intent, knowledge, and other conditions of the defendant's mind generally.  "Thus, under Rule 9(b), it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent."  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (citations omitted).

## Analysis

Wilson moves to dismiss the complaint as a shotgun pleading and for failure to state a claim.[3]

---

[3] In conjunction with the motion to dismiss, Wilson's former counsel, Andrew Vitali, III, submitted a declaration with 14 exhibits attached, which counsel relied upon in the motion.

**Shotgun Pleading**

Wilson first argues that the Court should dismiss the complaint as a shotgun pleading because it reincorporates the entire factual background into each count and improperly lumps him together with Mahoney.  A shotgun pleading is a pleading in which "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" and the defendant therefore cannot be "expected to frame a responsive pleading."  *See Anderson v. Dist. Bd. of Tr. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). The Eleventh Circuit recognizes four primary categories of shotgun pleadings:

> (1) complaints containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint

> (2) complaints that do not commit the mortal sin of re-alleging all preceding counts but are guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action

(Doc. 34-1, Declaration of Andrew Vitali, III (Vitali Decl.)).  At this stage, the Court will consider and take judicial notice of the documents filed with the SEC (Vitali Decl., Ex. A-I, M-N) for the purpose of determining what statements the documents contain, not the veracity of those statements.  *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (finding a district court may take judicial notice of certain facts, including public records, without converting a motion to dismiss into a motion for summary judgment); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (finding courts in a securities fraud case "may take judicial notice (for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents) of relevant public documents required to be filed with the SEC, and actually filed.") (footnote omitted).  Although the other exhibits are referenced in the compliant, the Court does not take judicial notice of Exhibits J-L, as they consist of a draft memorandum (not the final version), an alleged forged order confirmation, and some email communications (which may or may not include the entirety of the exchange) so need not convert the motion into a motion for summary judgment.  *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010) ("A judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings.").

(3) complaints that commit the sin of not separating into a different count each cause of action or claim for relief

(4) complaints that assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which actions or omissions, or which of the defendants the claim is brought against

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322-23 (11th Cir. 2015).

Upon review, the complaint does not incorporate the allegations of each predecessor count into each subsequent count; it merely reincorporates the general factual allegations into each count.  *See id.* at 1324 ("Weiland's re-alleging of paragraphs 1 through 49 at the beginning of each count looks, at first glance, like the most common type of shotgun pleading.  But it is not. … The allegations of each count are not rolled into every successive count on down the line.") (internal footnote omitted); *Terry v. Interim Healthcare Gulf Coast, Inc.*, No. 8:18-cv-692-T-33JSS, 2018 WL 1992276, at *2 (M.D. Fla. Apr. 27, 2018) ("A complaint that re-alleges just the factual allegations and does not re-allege each count, like the Complaint at issue, is different from a typical shotgun pleading and should be treated as such.").  Moreover, although some factual allegations address Mahoney, the complaint does not prevent the Court from determining the sufficiency of each claim or Wilson from framing a response.  *See U.S. Secs. & Exch. Comm'n v. Ustian*, 229 F. Supp. 3d 739, 778 (N.D. Ill. 2017) (denying motion to dismiss even though SEC's claims were all based on the same 180 fact paragraphs).  Consequently, the motion to dismiss is denied as to this ground.

***Sufficiency of the Allegations***

Wilson next attacks the sufficiency of the complaint.  To the extent that Wilson attempts to make substantive arguments on the merits of the SEC's claims, the Court need not address those arguments at this juncture.  *See Am. Int'l Specialty Lines Ins.*, 2009 WL 10671157, at *2.  Instead, viewing the facts in the light most favorable to the SEC, the Court finds that the SEC sufficiently pleaded each of its 14 claims against Wilson.

<u>Violations of Sections 17(a)(1)-(3) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5(a)-(c) (Counts I, II, III, IV, V, VI)</u>

Wilson first moves to dismiss the SEC's claims that he violated the anti-fraud provisions, *i.e.*, Sections 17(a)(1),[4] 17(a)(2),[5] and 17(a)(3) of the Securities Act,

---

[4] Section 17(a)(1) prohibits any person in the offer or sale of any securities "to employ any device, scheme, or artifice to defraud."  15 U.S.C. § 77q(a)(1).  To state a claim for a violation of Section 17(a)(1), the SEC must allege (1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with scienter. *S.E.C. v. Merch. Cap., LLC*, 483 F.3d 747, 766 (11th Cir. 2007) (citation omitted).

[5] Sections 17(a)(2) and (3) prohibit any person in the offer or sale of any securities from obtaining "money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading" and from engaging "in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."  15 U.S.C. § 77q(a)(2)-(3).  To state a claim for a violation of Section 17(a)(2) or 17(a)(3), the SEC must allege (1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with negligence.  *Merch. Cap.*, 483 F. 3d at 766 (citation omitted).

Section 10(b) of the Exchange Act,[6] and Rule 10b-5.[7]

*Scienter*

Wilson first argues that the SEC failed to adequately allege that Wilson acted with scienter in each of the six fraud claims.  The claims in Counts I, IV, V, and VI require the SEC to plead scienter, a mental state embracing intent on the part of the defendant to deceive, manipulate, or defraud.  *Aaron v. Secs. & Exch. Comm'n*, 446 U.S. 680, 686 (1980); *U.S. S.E.C. v. Ginsburg*, 362 F.3d 1292, 1297 (11th Cir. 2004).  A showing of knowing misconduct or severe recklessness satisfies the scienter requirement.  *S.E.C. v. Monterosso*, 756 F.3d 1326, 1335 (11th Cir. 2014) (quoting *S.E.C. v. Carriba Air, Inc.*, 681 F.2d 1318, 1324 (11th Cir. 1982)).  The SEC may plead scienter generally but "must still allege plausible facts or suggest reasonable inferences that, if taken as true, would support a finding of scienter."

---

[6] Section 10(b) of the Exchange Act makes it unlawful for any person, directly or indirectly, to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of the rules and regulations prescribed by the SEC.  15 U.S.C. § 78j(b).  Rule 10b-5, which implements Section 10(b), prohibits, in connection with the purchase or sale of any security, (a) using "any device, scheme, or artifice to defraud"; (b) making any untrue statement of a material fact or omitting a material fact necessary in order to make the statements made, in light of the circumstance under which they were made, not misleading; or (c) engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon a person."  17 C.F.R. § 240.10b-5.  To state a claim for a violation of Section 10(b) and Rule 10b-5, for which the scope of liability is the same, the SEC must allege (1) material misrepresentations or materially misleading omissions, (2) in connection with the purchase or sale of securities, (3) made with scienter.  *Merch. Cap.,* 483 F.3d at 766 (citation omitted).

[7] A complaint setting forth claims under Section 10(b) and Rule 10b-5 must satisfy the heightened pleading requirements for fraud established under Rule 9(b).  *Secs. & Exch. Comm'n v. Torchia*, 183 F. Supp. 3d 1291, 1310 (N.D. Ga. 2016) (citation omitted).  Notably, however, "[t]he SEC does not need to prove investor reliance, loss causation, or damages in an action under Section 10(b) of the Exchange Act, Rule 10b-5, or Section 17(a) of the Securities Act."  *S.E.C. v. Credit Bancorp, Ltd.*, 195 F. Supp. 2d 475, 490-91 (S.D.N.Y. 2002).

*Secs. & Exch. Comm'n v. Complete Bus. Sols. Grp., Inc.*, 538 F. Supp. 3d 1309, 1330 (S.D. Fla. 2021) (quoting *S.E.C. v. Mannion*, 789 F. Supp. 2d 1321, 1342 (N.D. Ga. 2011)) (internal quotation omitted).  In determining scienter, the court examines all allegations in the aggregate rather than considering sole allegations in isolation. *Id.* (citing *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1016-17 (11th Cir. 2004)).

Considering the allegations in the aggregate, the SEC properly alleged that Wilson either knowingly engaged in a fraudulent accounting scheme and revenue recognition scheme that did not comport with generally accepted accounting principles ("GAAP") and made misleading representations and warranties in filings with the SEC designed to improve Fuels' financial statements while raising money with investors and trading stock on an exchange or, at a minimum, was reckless in not knowing that such fraudulent scheme and misrepresentations were occurring. (Doc. 1, ¶¶2, 8, 22-29, 66-97, 102-115).  The SEC alleges Wilson participated in this scheme, either knowingly or recklessly, in his capacity as CFO when, among other things, he reviewed accounting entries, reviewed a recognition memo, drafted supporting documentation for such memo, supervised Fuels' accounting staff, received or was copied on correspondence with accounting staff regarding anomalies, backdated a purchase order, made misrepresentations to an audit firm, and consigned on quarterly reports and other filings with the SEC.  (*Id.*, ¶¶68-97,

102-15).  Any argument that the SEC failed to sufficiently plead scienter as to Counts I, IV, V, or VI necessarily fails.[8]

The claims under Section 17(a)(2) (Count II) and 17(a)(3) (Count III) require the SEC to plead only negligence, not scienter.  *Merch. Cap.*, 483 F.3d at 766 (citation omitted); *see Aaron*, 446 U.S. at 697 (finding that the language of § 17(a) requires scienter under § 17(a)(1), but not under § 17(a)(2) or § 17(a)(3)).  "Factual allegations supporting an inference of scienter will also satisfy the lower standard of negligence required for claims under Sections 17(a)(2) and (3) of the Securities Act." *Complete Bus. Sols.,* 538 F. Supp. 3d at 1331 (citation omitted).  As discussed, the SEC sufficiently pleaded scienter and thus sufficiently pleaded negligence.  The motion to dismiss is denied as to these grounds.

*Fuels Spin-Off*

As to the Fuels' spin-off from Tech, Wilson argues that the SEC's theory about the spin-off is vague, as the complaint includes no allegations that the spin-off was illegal or that Tech's transfer of fuel-related assets to Fuels was improper.[9]

---

[8]  Wilson appears to focus his argument, in part, upon the heightened pleading requirements set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* 15 U.S.C. § 78u-4(b).  That heightened requirement applies to private actions brought by a plaintiff as a class action, not to the SEC in a civil enforcement action.  *See* 15 U.S.C. § 78u-4(a)(1) ("The provisions of this subsection shall apply in each private action arising under this chapter that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure); *see U.S. S.E.C. v. Dunn*, 587 F. Supp. 2d 486, 501 (S.D.N.Y. 2008) ("Of course, by its terms, the PSLRA does not apply to this SEC enforcement action.").

[9]  In the complaint, the SEC alleges that, on May 22, 2020, Fuels filed its Form 10-K for the fiscal year ending December 31, 2019 with the SEC, signed by Mahoney and Wilson as the principal executive and financial officers of Fuels.  This constituted the first annual or interim report filed by Fuels following the spin-off from Tech.  According to the SEC, when spinning off Fuels, Mahoney and Wilson improperly moved several of Tech's purported assets to Fuels' 2019 financial statements, including approximately $1.2 million in prepaid commissions purportedly related to contracts for future services that should have remained

Wilson also points to details in the Separation Agreement, Master Distribution Agreement, and 2019 Form 10-K in arguing that both the spin-off and transfer of assets and liabilities were fully disclosed in SEC filings.  (Vitali Decl., Ex. G, H, I).

The SEC does not allege that the spin-off or a transfer of some assets were, in and of themselves, illegal or fraudulent.  Rather, the SEC sets forth straightforward allegations that Fuels, through the knowing or reckless actions of Mahoney and Wilson, engaged in improper accounting practices and misrepresented Fuels' financial position following the spin-off from Tech and that those misrepresentations impacted the offer and sale of their securities.  Just because Fuels reported details related to the spin-off and transfer of assets in SEC filings does not mean Fuels did not misrepresent its financial position in those filings.  Indeed, that is exactly what the SEC contends in this action.  As the SEC pleaded a plausible claim for fraud with respect to the spin-off, dismissal is not warranted on that basis.

> *Improper Recognized Revenue for $3 Million Fake Unit Sale and $2.3 Million Turkish Unit Sales*

Wilson argues that most of the allegations addressing the alleged $3 million sale do not involve Wilson, but, to the extent that they do, Wilson asserts that the vague allegations about a "fake" sale of the Venturi unit from Fuels to Tech cannot support a claim of fraud because the sale was fully and accurately disclosed in

---

with Tech and approximately $622,000 in construction in progress inventory, which was associated with the water sterilization business that remained with Tech and no longer involved Fuels.  The SEC alleges that Wilson participated in this process acting as an accountant when he acted in his capacity as Fuels' CFO, reviewed accounting entries, and supervised Fuels' accounting staff.

Fuels' Q2 2020 Form 10-Q, which stated that Tech, as Fuels' former parent company, was the buyer and both boards approved the sale. (*See* Vitali Decl., Ex. E).[10]  As to the $2.3 million in recognized revenue, Wilson contends that the SEC fails to allege any evidence of wrongdoing.

As the Court has already indicated, the simple act of stating something in SEC filings does not render such statements true, especially where the SEC explicitly alleges that those same filings contain multiple misrepresentations.  Even so, the SEC alleges that Fuels addressed the $3 million sale in the Q2 and Q3 Forms 10-Q, both signed by Mahoney and Wilson, and improperly recognizing all $3 million in revenue in Q2 2020, so there is no dispute as to whether Fuels disclosed such information.  Further, the allegations regarding these revenue recognition issues are not otherwise deficient.  The SEC alleged that Wilson improperly recognized revenues, forged an order confirmation, backdated a purchase order, sent or was copied on memoranda and letters with misrepresentations to the audit firm, and engaged in other improper accounting tactics to improve Fuels' financial statements during Q2 and Q3 2020 when it was raising money from investors and misrepresented that such statements were prepared in accordance with GAAP, that Fuels complied with all other requirements (including all SOX requirements), and that they had no knowledge of any fraud that could have a material effect on Fuels' financial statements.  The SEC sufficiently set forth Wilson's actions and

---

[10]  Wilson also challenges the vague contention that Fuels had no unit to sell as refuted by Fuels' Q2 2020 Form 10-Q.  The SEC set forth allegations in the alternative, stating first that Fuels did not have a unit to sell but then stating that, even if it did, misrepresentations still occurred.

statements, whether done with knowledge or recklessness, in furtherance of the revenue recognition scheme.  The motion to dismiss is denied as to this ground.

*COGS Reductions*

Wilson argues that the alleged accounting errors related to costs of goods sold ("COGS") reductions are immaterial and do not constitute fraud.  In the context of securities fraud, the test for materiality is "whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action." *Merch. Cap.*, 483 F.3d at 766 (quoting *Carriba Air*, 681 F.2d at 1323) (internal quotation omitted); *see Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) ("[T]o fulfill the materiality requirement there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.") (internal quotation and citation omitted).  "Materiality is a mixed question of law and fact—and a complaint should not be dismissed on materiality grounds unless the alleged misstatements or omissions 'are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'" *Complete Bus. Sols.*, 538 F. Supp. 3d at 1330 (quoting *Ganino v. Citizens Util. Co.*, 228 F.3d 154, 162 (2d Cir. 2000)).

Although Wilson seeks to make light of multiple accounting errors that the SEC alleges reflected misstatements of inventory, understated costs by 26%, and inflated gross margins by more than 20%, such errors represent facts that a reasonable person could attach importance to in determining the appropriate course

of action in dealing with Fuels.  Such errors are not so obviously unimportant to a reasonable investor that the claims related to the COGS errors should be dismissed. *See id*; *S.E.C. v. Scoppetoulo*, No. 10-20475-Civ, 2011 WL 294443, at *2 (S.D. Fla. Jan. 27, 2011) ("It is inappropriate to dismiss a securities fraud complaint at the pleading stage unless a reasonable person cannot identify the significance of the alleged misstatement or omission.").  Indeed, the SEC specifically alleges materiality as to the fraudulent accounting scheme, along with the false and misleading statements and omissions, lack of internal controls, and deceptive acts, in conjunction with the offer, purchase, and sale of securities.

As the SEC alleges these errors were made with Wilson's knowledge or, at a minimum, recklessness by Wilson, as CFO, in not knowing about or addressing the errors, the SEC has set forth plausible allegations regarding fraud based on the COGS reductions.  The motion to dismiss is denied as to this ground.

### *Private Placement Certifications*

Wilson also argues that the SEC's allegations regarding the private placement certifications depend on other alleged misconduct – namely that Fuels' alleged improper revenue recognition and accounting errors rendered Wilson's certifications in the SEC filings false and misleading.  The SEC alleges that Fuels was raising money from investors through three private placement offerings of Fuels' restricted common stock and debentures and warrants from approximately July 2020 to November 2020.  According to the SEC, Mahoney and Wilson controlled the private placement process and spoke with investors and potential

investors.  If investors or potential investors inquired about Fuels' financials, the investors and potential investors were directed to Fuels' financial statements in its SEC filings.

These efforts raised approximately $30 million, although Fuels paid back some of the July and August 2020 investors with interest and a prepayment penalty around October and November 2020.  According to the SEC, Fuels submitted Forms D with the SEC, signed by Wilson, for these private placement offerings on August 10, 2020, October 14, 2020, and November 24, 2020.  The common stock purchase agreements and securities purchase agreements for these offerings were signed by Mahoney and included as exhibits to the August 10, 2020, October 14, 2020, and November 24, 2020 Forms 8-K filed with the SEC and contained representations and warranties by Fuels, including that the financial statements in the SEC filings had been prepared in accordance with GAAP and fairly presented in all material respects the company's consolidated financial position and the results of operations and cash flows for the relevant periods.

The SEC alleges that such representations were materially false and misleading because of Fuels' improper recognition of revenue.  Given the Court's findings as to the claims relating to improper revenue recognition, the claims related to the private placement certificates also pass muster.  The motion to dismiss is denied as to this ground.

*Bonuses*

Finally, Wilson argues that Fuels' bonus-incentive program is not a basis for

fraud.  According to the SEC, from approximately April 2020 to November 2020, Fuels, Mahoney, and Wilson, in the offer or sale of securities by use of the means of interstate transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts or omissions to state material facts necessary to make statements made, in light of the circumstances under which they were made, not misleading.  With respect to bonuses, the SEC alleges that Fuels used a bonus performance matrix under which it awarded bonuses to executives based on meeting certain targets and that both Mahoney and Wilson, as CEO and CFO, received certain salary payments, including bonuses and vacation payouts, during the relevant period of the fraudulent scheme.  Fuels made its money through money obtained from investors based on misrepresentations in the offer and sale of Fuels' securities, which in turn led to Mahoney and Wilson receiving these bonuses and payouts.  The motion to dismiss is denied on this ground.

<u>Aiding and Abetting Fuels' Violations of Section 13(a), (b)(2)(A), and (b)(2)(B) Exchange Act and Rules 12b-20 and 13a-13 (Counts VIII, X, XII)</u>

Counts VIII, X, and XII set forth the aiding and abetting claims against Mahoney and Wilson as to Fuels' violations of Section 13(a), (b)(2)(A), and (b)(2)(B) of the Exchange Act and Rules 12b-20 and 13a-13.  Wilson premises his argument that the complaint fails to state a claim for aiding and abetting liability against him for Fuels' violations of the filing and internal accounting control requirements on the SEC's failure to plead any plausible primary violation.  Section 13 addresses the

filing of required periodical and other reports, 15 U.S.C. § 78m,[11] while Rule 13a-13 specifically instructs the filing of accurate quarterly reports on Form 10-Q, 17 C.F.R. § 240.13a-13.  Rule 12b-20 further dictates that "[i]n addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made[,] not misleading."  17 C.F.R. § 240.12b-20.

Under § 20(e) of the Exchange Act, aiding and abetting liability may be imposed upon "any person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of [the Exchange Act], or any rule or regulation issued" thereunder.  15 U.S.C. § 78t(e).  "Thus, to impose aiding and abetting liability under Section 20(e) there must be: (1) a primary violation of the securities laws; (2) the aider and abettor must have knowledge of the primary violation; and (2) the aider and abettor must provide substantial assistance in the commission of the primary violation."  *S.E.C. v. Goble*, 682 F.3d 934, 947 (11th Cir. 2012) (citations omitted); *see S.E.C. v. Bankatlantic Bancorp, Inc.*, No. 12-60082-Civ, 2012 WL 1936112, at *24 (S.D. Fla. May 29, 2012) ("[A] claim for aiding and

---

[11]  More specifically, Section 13(a) requires every issuer of a security to provide annual reports, quarterly reports, and any other information and documentation required under its rules and regulations to ensure proper protection of investors and insure fair dealing in the security.  15 U.S.C. § 78m(a).  Section 13(b)(2)(A) requires issuers to "make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer," while Section 13(b)(2)(B) requires issuers of securities to devise and maintain a system of internal accounting controls sufficient to reasonably assure that, among other things, transactions are recorded to permit preparation of financial statements in conformity with GAAP and to maintain accountability of assets.  15 U.S.C. § 78m(b)(2)(A) and (b)(2)(B).

abetting a securities violation requires that (1) another party is a primary violator; (2) the accused party had a general awareness that his role was part of an overall activity that is improper; and (3) the accused knowingly and substantially assisted the violation.") (citations omitted).

The knowledge or awareness requirement may be satisfied by a showing of extreme recklessness, meaning red flags, suspicious events creating reasons for doubt, or a danger so obvious that the actor must have been aware of the danger of the violation. *S.E.C. v. K.W. Brown & Co.*, 555 F. Supp. 2d 1275, 1307 (S.D. Fla. 2007) (citation and quotations omitted).  To establish substantial assistance, the SEC needs to allege that, "based upon all the circumstances surrounding the conduct in question, a defendant's actions are a 'substantial causal factor' in bringing about the primary violation." *Id.* (citations omitted).

Notwithstanding Wilson's argument to the contrary, the SEC properly pleaded primary violations against Wilson.  Namely, the SEC alleges that Wilson's falsification of Fuels' books and records, including the creation of fake orders, improperly recorded revenues, and understated costs, resulted in false and misleading quarterly reports in Q2 and Q3 2020 and that Wilson failed to maintain a sufficient system of internal accounting controls to allow preparation of its financial statements with GAAP or to prevent the misuse of PPP loan funds.  The SEC asserts that, as its CFO, Wilson knowingly, or with extreme recklessness, provided substantial assistance to Fuels in committing those primary violations relating to the filing of reports, maintenance of records, and establishment and

implementation of accounting controls.  Consequently, the SEC stated viable claims for aiding and abetting.  The motion to dismiss is denied as to this ground.

<u>Violations of Section 13(b)(5) of the Exchange Act and Rule 13b2-1 (Count XIII)</u>

Wilson argues that the SEC fails to allege that Wilson, as opposed to Mahoney or another Fuels' employee, knowingly falsified Fuels' books and records. Instead, Wilson argues that this claim relies upon the alleged improper revenue recognition theories, which, to the extent they involve Wilson, fail to state a plausible claim.

Section 13(b)(5) prohibits any individual from knowingly circumventing or knowingly failing to implement a system of internal accounting controls or knowingly falsifying any book, record, or account described in Section 13(b)(2).  15 U.S.C. § 78m(b)(5).  Exchange Act Rule 13b2-1 states that "[n]o person shall directly or indirectly, falsify or cause to be falsified, any book, record or account subject to section 13(b)(2)(A) of the" Exchange Act.  17 C.F.R. § 240.13b2-1.  "To state a claim under Rule 13b2-1, a plaintiff need only allege that the defendant contributed to the issuance of materially misleading financial statements." *S.E.C. v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 497 (S.D.N.Y. 2007) (internal quotation and citation omitted).  In setting forth a claim for a Rule 13b2-1 violation, the SEC does not have to plead scienter. *S.E.C. v. Espuelas*, 767 F. Supp. 2d 467, 479-80 (S.D.N.Y. 2011) (finding that Rule 13b2-1 and 13b2-2 do not require the SEC to plead scienter).

Here, the SEC alleges that (1) from approximately April 2020 to November

2020, Wilson and Mahoney, directly or indirectly, knowingly falsified or caused the falsification of Fuels' books, records, or accounts required to be made and kept by Section 13(b)(2)(A) of the Exchange Act, and (2) such acts contributed to the issuance of materially misleading financial statements by Fuels.[12]  The SEC therefore sufficiently alleged violations of Section 13(b)(5) of the Exchange Act and Rule 13b2-1.  The motion to dismiss is denied as to this ground.

Violation of Exchange Act Rule 13b2-2 (Count XIV)

Wilson contends that this claim depends on the SEC's alleged backdated purchase order contentions, which are vague and not pleaded with particularity. Under Rule 13b2-2, a director or officer of an issuer[13] is prohibited from directly or indirectly (1) making or causing to be made a materially false or misleading statement to an accountant in connection with; or (2) omitting to state, or cause another person to omit to state, any material fact necessary to make statements made, in light of the circumstances under which they were made, not misleading, to an accountant in connection with any audit, review, or examination of financial statements made under the Exchange Act or in the preparation or filing of any document or report required to be filed with the SEC.  17 C.F.R. § 240.13b2-2.  As

---

[12] As discussed above, the SEC properly alleged that Wilson knowingly falsified Fuels' books and records (*i.e.*, creating fake orders and backdating orders), or was reckless in not recognizing the errors, that resulted in Fuels improperly recognizing revenue in Q2 and Q3 2020 due to an incorrect application of GAAP, Wilson improperly reducing COGS without substantiation, Wilson failing to properly implement accounting controls, and Wilson signing the Forms 10-Q for the relevant quarters with the requisite knowledge of the accounting misconduct.

[13] An "issuer" is defined as "any person who issues or proposes to issue any security," with some noted exceptions not applicable here.  15 U.S.C. § 78c(a)(8).

with Rule 13b2-1, Rule 13b2-2 does not require the SEC to plead scienter. *Espuelas*, 767 F. Supp. 2d at 479-80.

The SEC alleges that from approximately April 2020 to November 2020, Wilson and Mahoney, both officers of Fuels, directly or indirectly, made or caused to be made materially false and misleading statements to accountants at the audit firm, or omitted to state, or caused others to omit to state, material facts necessary in order to make the statements made not misleading to accountants at the audit firm, in connection with audits, reviews, or examinations of the financial statements of Fuels or the preparation or filing of reports required to be filed with the SEC. The SEC set forth sufficient allegations as to Wilson regarding the preparation of purportedly fake and backdated purchase orders presented to the outside auditor as well as management recognition letters sent to the auditor for Q2 2020 and Q3 2020. Accordingly, the SEC stated a claim for a violation of Exchange Act Rule 13b2-2. The motion to dismiss is denied as to this ground.

### Violation of Exchange Act Rule 13a-14(a) (Count XV)

Wilson contends that the SEC maintains no independent right of action under Exchange Act Rule 13a-14[14] and therefore must tie any purported violation of

---

[14] Under Exchange Act Rule 13a-14, the CEO and CFO of an issuer must sign SOX certifications, which are filed as exhibits to Forms 10-Q and 10-K and similar filings and which require the CEO and CFO to certify, among other things, that the signing officers reviewed the report, the report does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements not misleading, the report fairly presents the financial condition of the entity for the applicable period, and the signing officers are responsible for establishing and maintaining internal controls. *See* 17 C.F.R. § 240.13a-14(a); 15 U.S.C. § 7241(a); *Secs. & Exch. Comm'n v. Rosenberger*, 22cv4736 (DLC), 2023 WL 1928093, at *6 (S.D.N.Y. Feb. 10, 2023).

Rule 13a-14 to a separate actionable provision of the securities law.[15]  Wilson relies

upon *SEC v. Black*, wherein the Northern District of Illinois held that a false SOX

certification does not state an independent violation of the securities law in an SEC

enforcement proceeding and accordingly dismissed the SEC's claim that the

defendant violated Rule 13a-14(b).  No. 04 C 7377, 2008 WL 4394891, at *16-17

(N.D. Ill. Sept. 24, 2008).

       As the SEC argues, however, several courts have disagreed with the analysis

in *Black* and declined to follow its holding.  *See, e.g., U.S. Secs. & Exch. Comm'n v.*

*Winemaster*, 529 F. Supp. 3d 880, 925-26 (N.D. Ill. 2021) ("However, many courts

that have considered *Black* disagree with its analysis, concluding that it mistakenly

relied on cases involving Rule 13a-14 claims brought by private parties."); *Ustian*,

229 F. Supp. 3d at 777 (noting that courts outside the Northern District of Illinois

distinguish *Black* as stating the law regarding private securities litigation and

following the specific statutory authority allowing the SEC to enforce violations of

Rule 13a-14); *S.E.C. v. Brown*, 740 F. Supp. 2d 148, 164-65 (D.D.C. 2010)

(concluding that the SEC's claim to enforce Rule 13a-14 stated a valid cause of

action, noting that such claims are routinely permitted, and stating that "[n]o courts

appear to have followed *Black*'s logic or holding").  Indeed, as noted in *Winemaster*,

courts considering the issue find authority for the SEC to pursue claims for

---

[15]  Wilson also reiterates his argument regarding the lack of any plausible allegations regarding materially false or misleading statements made with scienter sufficient to state a claim against Wilson under Section 17(a) of the Securities Act or Section 10(b) and Rule 10b-5 of the Exchange Act as a basis for finding that the complaint fails to state a plausible violation of Rule 13a-14.  The Court already rejected Wilson's arguments above so declines to reconsider them with respect to Count XV.

violations of Rule 13a-14 pursuant to Section 21(d)(1) of the Exchange Act, 15

U.S.C. § 78u(d)(1), which permits the SEC to bring an action in a United States

District Court to enjoin acts or practices constituting a violation of any provision of

the Exchange Act or the rules or regulations thereunder. 529 F. Supp. 3d at 925-26.

The Court finds persuasive the line of cases rejecting the reasoning in *Black*

and finding support in Section 21(d)(1) of the Exchange Act for the SEC's authority

to bring a stand-alone claim for a violation of Rule 13a-14.  As the SEC alleged that

Wilson was aware of material misrepresentations and misleading financial

statements at the time he signed his SOX certifications, the SEC pleaded a viable

claim for a violation of Rule 13a-14.  The motion to dismiss is denied as to this

ground.

Violation of SOX § 304(a) (Count XVI)

Wilson asserts that the complaint does not state a claim for a violation of

SOX § 304(a)[16] because the SEC relies upon a hastily submitted Form 8-K filed on

behalf of Fuels in April 2021, after his employment was terminated, which

announced that Fuels was required to prepare an accounting restatement based on

financial reports in its 2019 Form 10-K and three 2020 Form 10-Qs that could not

be relied upon.  He also asserts that the SEC cannot merely allege that a company

---

[16]  Under SOX § 304(a), the CEO and CFO of an issuer required to prepare an accounting restatement due to material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws must reimburse the issuer for both (1) any bonus or incentive-based or equity-based compensation received by that person from the issuer during the 12-month period following the first public issuance or filing with the SEC (whichever occurs first) of the financial document embodying such financial reporting requirement; and (2) any profits realized from the sale of securities of the issuer during that same 12-month period.  15 U.S.C. § 7243(a).

was required to submit an accounting restatement or that the company was in material noncompliance.  Rather, according to Wilson, there must be an actual filing of the restatement to state a claim.  *See S.E.C. v. Shanahan*, 624 F. Supp. 2d 1072, 1078 (E.D. Mo. 2008) ("It is the opinion of this Court that the ordinary, contemporary, common meaning of Section 304 is that, before penalties may be imposed, an issuer must be compelled or ordered to prepare a financial restatement, and must actually file the restatement.").  Since Fuels never made such filing, Wilson contends that the SEC cannot state a claim under SOX § 304(a).  The SEC acknowledges that Fuels did not complete its restatement but argues that Wilson's reading of the statute and reliance upon *Shanahan* are erroneous.

Neither party cites to binding authority on the issue, and the Court has not found any on point.  Notwithstanding the finding in *Shanahan*, the Court considers the plain language of the statute along with the legislative intent in finding that the SEC can and did state a valid claim for a violation of SOX § 304(a), despite Fuels' failure to file its required restatement.  *See* 15 U.S.C. § 7243(a); S. Rep. No. 107-205, at 26 (2002), 2002 WL 1443523 (indicating that Congress passed SOX § 304(a) as a remedial measure "designed to prevent CEOs or CFOs from making large profits by selling company stock, or receiving company bonuses, while management is misleading the public and regulators about the poor health of the company.").  To allow Wilson to potentially escape liability because, even though a restatement was required, Fuels did not prepare it due to the "poor historic processes and controls" implemented and overseen by Wilson himself, would effectively reward Wilson for

engaging in allegedly fraudulent and deficient behavior in his role as CFO.  Such an outcome remains at odds with both the statutory language and the legislative intent behind SOX § 304(a).  Accordingly, the SEC stated a valid claim for a violation of SOX § 304(a).

### Control Person Liability under Section 20(a) of the Exchange Act (Count XXII)

Finally, Wilson contends that the SEC failed to state a claim for control person liability against him based on his argument that the complaint fails to allege plausible claims of intentional accounting misconduct or fraud in revenue recognition with respect to anything in which Wilson was involved.  Section 20(a) of the Exchange Act holds jointly and severally liable any "person who, directly or indirectly controls any person liable" for securities violations to the same extent as such controlled person.  15 U.S.C. § 78t(a).[17]  To state a claim for control person liability, the SEC must allege (1) a primary violation of federal securities laws, and (2) that the defendant exercised actual control over the primary violator.  *In re Galectin Therapeutics, Inc. Secs. Litig.*, 843 F.3d 1257, 1276 (11th Cir. 2016).  As to the first element, the SEC properly alleged several violations of federal securities laws by Fuels through its purported accounting fraud, books and records, and internal controls violations, as detailed more fully above.

---

[17]  The statute states: "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable (including to the Commission in any action brought under paragraph (1) or (3) of section 78u(d) of this title), unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."

As to the second element, the SEC properly alleged the requisite control as to Wilson. The SEC defines "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405; *Laperriere v. Vesta Ins. Grp., Inc.*, 526 F.3d 715, 723 (11th Cir. 2008). To establish control, the SEC must allege that (1) the defendant held the power to control the general affairs of the primary violator, and (2) the defendant held the power to control the specific corporate policy that resulted in the primary violation. *Laperriere*, 526 F.3d at 723 (citation omitted). The SEC alleges that Wilson operated in several key control roles, including as Fuels' General Counsel, CFO, and Secretary, and directed and supervised the accounting team and participated in the alleged fraudulent activities, recording and reporting violations, and internal accounting control violations. The SEC therefore stated a valid claim for control person liability. The motion to dismiss is denied as to this ground.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

1. "Defendant Tyler B. Wilson's Motion to Dismiss Plaintiff's Complaint" (Doc. 34) is hereby **DENIED**.

2. Wilson is directed to file an answer to the complaint on or before September 21, 2023.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>31st</u> day of

August, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**