UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SECURITIES AND EXCHANGE COMMISSION,**

    **Plaintiff,**

v.                           Case No.: 8:22-cv-1939-TPB-AAS

**TARONIS TECHNOLOGIES, INC.
(n/k/a BBHC, INC.), et al.**

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Securities and Exchange Commission (the SEC) renews its motion for entry of a default judgment against Defendant Taronis Technologies, Inc., n/k/a BBHC, Inc. (Taronis Tech).[1] (Doc. 99). Taronis Tech did not respond. The undersigned **RECOMMENDS** that SEC's motion be **GRANTED.**

**I.    BACKGROUND**

Taronis Tech is a Delaware corporation with common stock registered with the SEC. (Doc. 1). Taronis Tech produced fuel and gas products, including MagneGas, its metal cutting fuel marketed as a faster and safer alternative to

---

[1] The SEC's initial motion for default judgment was denied without prejudice because the action was not resolved as to all defendants. (*See* Docs. 50, 54). Judgment is now entered against the remaining defendants. (*See* Docs. 98, 102, 103).

1

acetylene, and water conservation and sterilization products. (*Id.* at ¶ 18). With both products, Taronis Tech manufactured gasification and sterilization units of varying sizes (e.g., 50KW, 200KW, and 300KW), including its patented Venturi Plasma Arc gasification units, which manufactured MagneGas. (*Id.*). On December 5, 2019, Taronis Tech spun off its wholly owned subsidiary Taronis Fuels, the fuel and gas side of the business, leaving Taronis Tech with the water side of the business. (*Id.* at ¶ 19). As of April or May 2020, Taronis Tech had no operations. (*Id.* at ¶ 7).

According to the complaint, from January 2019 to March 2020, Taronis Tech issued materially false and misleading press releases (drafted by its former Chief Executive Officer (CEO) Scott David Mahoney) stating there were agreements and relationships with customers that did not exist or were exaggerated, including with the City of San Diego, a franchise of Popeye's Louisiana Kitchen, Inc. (Popeye's), Smithfield Foods, Inc. (Smithfield), and the Turkish government. (*Id.* at ¶¶ 30–31, 33).

The SEC sued Taronis Tech alleging it violated and Sections 10(b) and 13(a) of the Securities Exchange Act of 1934 (the Exchange Act) and Rules 10b-5, 12b-20, 13a-1, 13a-11, and 13a-13 thereunder. (Doc. 1). The SEC served Taronis Tech with process through its registered agent. (Doc. 11). Taronis Tech did not respond, and the clerk entered a default. (Doc. 18). The SEC now moves for default judgment and requests a permanent injunction against future

violations and a civil penalty of $1,035,909 against Taronis Tech. (Doc. 99). Taronis Tech did not respond, and the time to do so has expired. *See* Local Rule 3.01(c), M.D. Fla.[2]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 sets forth a two-step process for securing a default judgment. First, a party seeking default must obtain a Clerk's entry of default under Rule 55(a) by providing evidence "by affidavit or otherwise" that the opposing party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55. Second, after the Clerk has made an entry of default, the party seeking default judgment must move for default judgment under Rule 55(b)(1) or (2).

A default entered under Rule 55(a) constitutes an admission of all well-pleaded factual allegations in a complaint. *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[3] However, entry of default does not automatically warrant the court's entry of default judgment. *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1362

---

[2] Because Taronis Tech failed to timely respond to SEC's motion for default judgment, the court may treat the motion as unopposed. *See* Local Rule 3.01(c), M.D. Fla. ("If a party fails to timely respond [to a motion], the motion is subject to treatment as unopposed.").

[3] The Eleventh Circuit has adopted as binding precedent all decisions issued by the former Fifth Circuit prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

3

(N.D. Ga. 2011) (quoting *Nishimatsu Constr.*, 515 F.2d at 1206). Even if a defendant is in default, it "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* "There must be a sufficient basis in the pleadings for the judgment entered," and "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Nishimatsu Constr.*, 515 F.2d at 1206.

Since entry of default constitutes an admission of the facts in a complaint, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Before entering a final order regarding a default judgment, a court may conduct a hearing to determine the damages. Fed. R. Civ. P. 55(b)(2)(B). However, "[a]n evidentiary hearing is not a *per se* requirement" for an entry of default judgment." *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). "District courts in the Eleventh Circuit have noted that an evidentiary hearing is not necessary where the moving party has provided supporting affidavits as to the issue of damages." *Frazier*, 767 F. Supp. 2d at 1365.

### III. ANALYSIS

The SEC alleges Taronis Tech issued materially false and misleading press releases advertising agreements and relationships with customers that did not exist or were exaggerated, including with the City of San Diego, Popeye's, Smithfield, and the Turkish government.

4

### A. Liability

Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, all proscribe fraudulent conduct in the offer or sale of securities. "Section 10(b) of the Securities Exchange Act makes it 'unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . ., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe.'" *S.E.C. v. Zandford*, 535 U.S. 813, 819 (2002) (quoting 15 U.S.C. § 78j). Rule 10b-5 implements this provision and bans the use of "any device, scheme, or artifice to defraud" or any other act that operates as a fraud or deceit. 17 C.F.R. § 240.10b-5(a), (c). Rule 10b-5 also proscribes making any "untrue statement of material fact" or the omission of any material fact "necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b).

To establish Taronis Tech violated Section 10(b) and Rule 10b-5, the SEC must show Taronis Tech made a false statement or omission, of material fact, with scienter, and in connection with the purchase or sale of a security. *SEC v. Merchant Cap., LLC*, 483 F.3d 747, 766 (11th Cir. 2007).[4] "A claim under

---

[4] The SEC must also establish Taronis Tech used the mails, an instrumentality of interstate commerce, or the facility of a national securities exchange in connection

5

Section 17(a) of the Securities Act requires essentially the same elements as a claim under Section 10(b) and Rule 10b-5, except that there is no scienter requirement for claims under Section 17(a)(2) or (3)." *Id.* (citation omitted).

### 1. Materially False Statements or Omissions

To determine whether false statements were material, the court considers "whether there is a substantial likelihood that a reasonable investor would consider the omitted facts or misrepresentations important in deciding whether to invest." *Currie v. Cayman Res. Corp.*, 835 F.2d 780, 783 (11th Cir. 1988) (citations omitted). The test for materiality in the securities fraud context is "whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action." *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1327 (11th Cir. 1982). "The question of materiality is not subject to a bright-line test but instead depends on the specific circumstances of each case." *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019) (citation omitted).

#### a. False Statements or Omissions about the City of San Diego

On January 28, 2019, Taronis Tech filed a Form 8-K, attaching a press release that announced that "the City of San Diego has elected to use

---

with the violation. 15 U.S.C. § 78j(b). The complaint alleges Taronis Tech used the instrumentalities of interstate commerce or the mail to conduct the fraud. (Doc. 1, ¶ 6).

MagneGas as its metal cutting fuel of choice, marking the first major city contract for the adoption of our metal cutting fuels." (Doc. 1, ¶ 34). However, there was no contract between Taronis Tech and the City of San Diego. (*Id.* at ¶ 36).

### b. False Statements or Omissions about Popeye's

On October 21, 2019, Taronis Tech issued a press release titled, "Water Pilot Wins 5 Installations with Large Popeye's Franchise." (*Id.* at ¶ 39). The press release stated Popeye's "ha[d] authorized an initial five locations for paid installations of the Water Pilot's water conservation technology," and if those installations "deliver[ed] the expected savings in water utility expenses," the franchise "anticipate[d] authorizing the install at all 115 locations." (*Id.*). In addition, on February 3, 2020, Taronis Tech issued a press release announcing it won a "$260,000 Client Commitment" with the "successful execution of a pilot program with a 130 location Popeye's franchise operator in Florida." (*Id.* at ¶ 40).

These press releases were false. Although a Popeye's Florida franchisee allowed a Taronis Tech subsidiary to test its water technology, the franchisee did not have to pay anything unless it wanted to keep the valve installed during the test. (*Id.* at ¶ 41). Taronis Tech issued these false press releases to give investors the impression that Popeye's was a paying client of Taronis Tech's majority-owned subsidiary, Water Pilot, LLC.

7

### c. False Statements or Omissions about Smithfield

Taronis Tech issued several false and misleading press releases to give the overall impression it had an agreement with Smithfield. (*Id.* at ¶ 43). Specifically,

- On December 12, 2019, Taronis Tech issued a press release entitled, "Taronis Provides Corporate Update," which stated Taronis Tech was "actively engaged in dialogue with one of the largest hog producers in the US" to deploy "sterilization units at scale across North Carolina."

- On January 31, 2020, Taronis Tech issued a press release entitled, "Taronis Provides Summary of Shareholder Town Hall." The press release announced that, "Taronis Water, a wholly owned subsidiary of Taronis Technologies has made meaningful progress on a strategic relationship with one of the largest global hog producers to positively impact the North Carolina hog waste issue."

- On March 9, 2020, Taronis Tech issued yet another press release, announcing that it was constructing three new water sterilization units to "be dedicated to serving the hog industry in North Carolina."

(*Id.* at ¶¶ 44, 45, 47). However, Taronis Tech had no agreement with Smithfield, and there was never any agreement to utilize Taronis Tech's sterilization units for the hog industry in North Carolina. (*Id.* at ¶ 49).

### d. False Statements or Omissions about the Turkish Government

Taronis Tech made these false and misleading statements to make it appear that Taronis Fuels had an agreement with the Turkish government:

8

- In a October 3, 2019 press release, Taronis Tech stated that "[t]he government of Turkey fully recognizes the potential impact of using MagneGas" in light of safety incidents in Turkey, and "we can partner to help dramatically reduce these incidents;" and "[w]e estimate that this is a $200 million annual revenue opportunity based on the analysis provided by Turkish government representatives."

- In a December 30, 2019 press release, Taronis Tech stated that the Turkish government said the Turkish market has "approximately $200 million in annual consumption" and would require approximately 100 of Taronis' 300KW gasification units, and that the Turkish "government has informed Taronis to be prepared to deliver all one hundred gasification units over a 24 month time frame," which "would require a significant expansion of the existing $165 million purchase contract, which covers only thirty gasification units."

- In a February 24, 2020 press release describing that Taronis Fuels was scheduling the delivery of a 50KW unit to Turkey.

(*Id.* at ¶¶ 50, 51, 52). However, the Turkish government had no agreement with any Taronis entity and only one 50KW demo unit, not subject to any contract, was shipped to Turkey. (*Id.* at ¶ 54).

\*   \*   \*   \*   \*   \*

These misrepresentations and omissions made in press releases about the City of San Diego, Popeye's, Smithfield, and the Turkish government are material because a reasonable investor would attach importance to these facts and would have viewed them as having significantly altered the total mix of information available. *See Carriba Air, Inc.*, 681 F.2d at 1318.

9

### 2. Taronis Tech Acted with Scienter

The SEC must also show Taronis Tech acted with scienter — an "intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976). "Scienter may be established by a showing of knowing misconduct or severe recklessness." *Carriba Air, Inc.*, 681 F.2d at 1324. Recklessness requires a showing that the conduct was "an extreme departure of the standards of ordinary care" that presented "a danger of misleading buyers or sellers that either was known to the defendant or is so obvious that the actor must have been aware of it." *Id.* (quoting *Sec. & Exch. Comm'n v. S.W. Coal & Energy Co.*, 624 F.2d 1312, 1321 (5th Cir. 1980)).

The complaint alleges Taronis Tech's CEO, Mr. Mahoney, drafted these press releases and knew them to be false. (Doc. 1, ¶ 30). Taronis Tech, through Mr. Mahoney, acted with recklessness by making false misrepresentations and omissions in the press releases abouts its relationship with the City of San Diego, Popeye's, Smithfield, and the Turkish government. Taronis Tech's conduct constitutes an "extreme departure from the standards of ordinary care," and the "danger of misleading buyers from these actions was 'so obvious' that Taronis Tech must have known about it." *S.E.C. v. Coplan*, No. 13-62127, 2014 WL 695393, at *4 (S.D. Fla. Feb. 24, 2014) (citation omitted). Thus, Taronis Tech acted with scienter in its deception.

### 3. Taronis Tech's Material Misrepresentations Occurred in Connection with the Purchase or Sale of Securities

The complaint alleges the misrepresentations and omissions were made in connection with the purchase or sale of securities. (Doc. 1, ¶¶ 125, 139, 142, 145). First, shares of stock in a corporation are "securities" as defined by the federal securities laws. 15 U.S.C. § 78c(a)(10). Second, courts should broadly interpret "in connection with" under Section 10(b) because the securities laws "should be construed not technically and restrictively, but flexibly to effectuate [their] remedial purposes." *SEC v. Zandford*, 535 U.S. 813, 819 (2002). Thus, the "in connection with" requirement is satisfied if the misrepresentation "coincides" with a securities transaction. *Id.* at 822–24.

Taronis Tech made materially false and misleading misrepresentations and omissions in press releases issued to the public. Some of these press releases, including those about the City of San Diego, were made in public filings attachments to Forms 8-K. The press releases were publicly disseminated so investors would have relied on the information therein. Thus, Taronis Tech's misrepresentations and omissions were made in connection with the purchase or sale of securities.

In addition, issuers of securities registered under Section 12 of the Exchange Act must file accurate annual, current reports, and quarterly reports with the Commission under Section 13(a) of the Exchange Act and Rules 13a-

1, 13a-11, and 13a-13 thereunder. Rule 12b-20 states that "[i]n addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made not misleading." 17 C.F.R. § 240.12b-20. Taronis Tech filed a Form 8-K with the SEC on February 20, 2020, attaching a Taronis Tech investor presentation for the quarterly period ending March 31, 2020 (Q1 2020) that utilized a Popeye's logo under the heading "Representative Franchisee Clients" and a Smithfield's logo under the heading "Priority Stakeholders" as attachments. (Doc. 1, ¶¶ 42, 46). These allegations are deemed admitted and Taronis Tech has violated Section 13(a) and Rule 12b-20.[5]

### B. Damages

The next issue is damages. The court exercises its discretion to grant the SEC's request for damages without a hearing. *Frazier*, 767 F. Supp. 2d at 1365. The court now must decide the remedies to impose as well as whether to impose civil monetary penalties.

### 1. Injunctive Relief

The SEC requests that the court enjoin all Taronis Tech from engaging in future securities laws violations. The SEC is entitled to injunctive relief

---

[5] The complaint also alleges that Taronis Tech was delinquent in its filing with the SEC. (Doc. 1, ¶¶ 7, 126–27).

when it establishes (1) a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated. *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004) (internal citations and quotations omitted). Indicia that a wrong will be repeated include the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of the conduct, and the likelihood that the defendant's occupation will present opportunities for future violations. *Id.* While scienter is an important factor in this analysis, it is not a prerequisite to injunctive relief. *Id.*

Taronis Tech violated federal securities laws by making material misstatements and omissions in multiple press releases. Thus, the first prong is satisfied. The second prong is also satisfied because several factors indicate a reasonable likelihood that the violations could be repeated. Taronis Tech's violations were recurring because it issued the press releases containing false and misleading statements and omissions from January 2019 until March 2020. (Doc. 1, ¶ 30). Taronis Tech, through Mr. Mahoney, acted with severe recklessness in making the material misrepresentations or omissions in the press releases. Taronis Tech knew or was reckless in not knowing it had no contract with the City of San Diego, it had not contracted with the Turkish

13

government, among the other false and misleading statements. Taronis Tech has neither recognized the wrongfulness of its conduct nor made assurances against future violations. Thus, an injunction is warranted to ensure that Taronis Tech does not resume committing securities fraud.

### 2. Civil Monetary Penalties

Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act—with nearly identical language—allow the SEC to seek civil penalties imposed by the court. The Exchange Act provides,

> Whenever it shall appear to the Commission that any person has violated any provision of this chapter, [or] the rules or regulations thereunder, ... the Commission may bring an action in a United States district court to seek, and the court shall have jurisdiction to (i) impose, upon a proper showing, a civil penalty to be paid by the person who committed such violation....

15 U.S.C. § 78u(d)(3)(A)

To determine the amount of the penalty, the Exchange Act outlines three tiers based on the nature of the violation. Under the first tier, "[f]or *each violation*, the amount of the penalty shall not exceed the greater of (I) $9,753 for a natural person or $97,523 for any other person." 15 U.S.C. § 78u(d)(3)(B)(i) (emphasis added). The second tier goes further: "Notwithstanding clause (i), the amount of a civil penalty . . . for *each such violation* shall not exceed the greater of (I) $97,523 for a natural person or $487,616 for any other person . . . if the violation described in subparagraph

14

(A) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. § 78u(d)(3)(B)(ii) (emphasis added).

> For the third tier, the Exchange Act states:
>
> Notwithstanding clauses (i) and (ii), the amount of a civil penalty imposed . . . for *each violation* . . . shall not exceed the greater of (I) $195,047 for a natural person or $975,230 for any other person . . . if—
>
> (aa) the violation described in subparagraph (A) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and
>
> (bb) such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

15 U.S.C. § 78u(d)(3)(B)(iii).

"Civil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations." *SEC v. Monterosso*, 756 F.3d 1326, 1338 (11th Cir. 2010). The "Commission need only make a proper showing that a violation has occurred, and a penalty is warranted." *SEC v. Warren*, 534 F.3d 1368, 1370 (11th Cir. 2008). Although the statute leaves the amount to be imposed to the discretion of the district judge, "courts consider numerous factors, including the egregiousness of the violation, the isolated or repeated nature of the violations, the degree of scienter involved, whether the defendant concealed his trading, and the deterrent effect given the defendant's financial worth." *S.E.C. v. Miller*, 744 F. Supp. 2d 1325, 1344 (N.D. Ga. 2010)

15

(citation omitted). The Exchange Act also authorizes penalties for "each violation," so "courts are empowered to multiply the statutory penalty amount by the number of statutes the defendant violated, and many do." *Miller*, 744 F. Supp. 2d at 1345.

By issuing these false and misleading statements to the public, Taronis Tech created a significant risk of substantial losses to any investors who bought shares of Taronis Tech based on the press releases. Taronis Tech received a corporate benefit of at least $18 million from the artificial inflation of Taronis Tech shares based on the false and misleading press releases. (Doc. 99-1, ¶¶ 3, 9–12). For example, (1) the press release issued on January 28, 2019 about the city of San Diego is associated with a +22.3% abnormal return ($0.044 per share); (2) the press release issued on July 22, 2019 announcing a $165 million contract to sell gasification units to a "Turkish Gas Consortium" is associated with a +73.4% abnormal return ($0.231 per share); (3) the press release issued on December 12, 2019 announcing that Taronis Tech was "actively engaged in dialogue with one of the largest hog producers in the US [to deploy] sterilization units at scale across North Carolina," is associated with a +22.1% abnormal return ($0.201 per share); and (4) the press release issued on January 6, 2020 announcing that Taronis Tech had reached an agreement with a Turkish company where the Turkish company would market 50 gasification units is associated with a +23.1% abnormal return ($0.243 per

share). (*Id.* at ¶¶ 9a-d). Thus, the false and misleading press releases directly or indirectly caused substantial losses or created a significant risk of substantial losses to investors in the form of the artificially inflated share prices. (*Id.* at ¶¶ 8–12).

For violations occurring between November 3, 2015 and the present, a third-tier penalty for entities is the greater of $1,035,909[6] per violation or the gross amount of the pecuniary gain to that entity from each violation. 15 U.S.C. § 78u(d)(3)(B)(ii); 17 C.F.R. § 201.1004. Accordingly, the court should award one-time third-tier civil penalty of $1,035,909 against Taronis Tech.

## IV.   CONCLUSION

For the reasons stated, it is **RECOMMENDED** that:

(1)   The SEC's Motion for Default Judgment (Doc. 10) be **GRANTED**;

(2)   The SEC be directed to submit a proposed final judgment for the court's consideration; and

(3)   The court award a third-tier civil penalty against Taronis Tech in the amount of **$1,035,909**.

---

[6] *See* United States Securities and Exchange Commission, Inflation Adjustments to the Civil Monetary Penalties Administered by the Securities and Exchange Commission; https://www.sec.gov/rules/other/2022/33-11021.pdf.

**ENTERED** in Tampa, Florida on July 11, 2024.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge

### NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely under 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.